No. 26,053.

Union School District No. 2, of the County of Sherman, other-
wise known as Edson Consolidated School District No. 2, *Plain-
tiff*, v. John D. Starrett, as County Clerk, Viola Snowbarger,
as County Treasurer, and School District No. 64, of Sherman
County, *Defendants*.

#### SYLLABUS BY THE COURT.

1. Mandamus—*Taxation—School District Disorganized—Territory Attached to
   Adjoining Districts by County Superintendent—Discretion of County Super-
   intendent—No Official Concern of County Commissioners.* Under R. S.
   72-818, when a school district has failed to maintain a school for at least
   seven months in each year for a period of three years, during which period
   it also made no provision for sending its pupils to other schools and for
   paying for their transportation and tuition, such district must be dis-
   organized, and it is the duty of the county superintendent to execute the
   statute and to attach the territory of the disorganized district to some
   adjacent district, preferably to one maintaining a graded school offering a
   high-school course, or to one or more adjoining districts, at the discretion
   of the county superintendent, and the board of county commissioners has
   no official concern therewith by appeal from the action of the county
   superintendent.

2. Same—*No Abuse of Official Discretion by County Superintendent.* The
   facts alleged by defendants, noted in the opinion, do not constitute an
   abuse of official discretion so as to vitiate the action of the county superin-
   tendent in disposing of the territory of a disorganized school district.

Original proceeding in mandamus. Opinion filed November 19, 1924. Writ
allowed.

*W. L. Sayers,* of Hill City, and *T. E. Stewart,* of Goodland, for the plain-
tiff.

*George D. Freeze,* of Goodland, for the defendants.

The opinion of the court was delivered by

Dawson, J.: This is an original proceeding wherein the plaintiff,
a graded-school district of Sherman county, seeks a writ of man-
damus directing the county clerk to spread its tax levy over cer-
tain lands and property attached to it by order of the county
superintendent. The county treasurer is made a party by reason of
his official concern with the controversy. School district No. 64
is made defendant because of its claim to the territory under an
order of the board of county commissioners and because its revenues
will be materially affected by the result.

It appears that for some years past, until the early autumn of this year, there' has existed at or near the village of Edson, in Sherman county, a consolidated school district designated as union school district No. 2, in which has been maintained an approved high-school course of two years. There has also existed nearby a common-school district, No. 21, but which for five years last past has not maintained a public school. Adjacent to union school No. 2 and common-school district No. 21 there also exists the defendant school district No. 64, which maintains a common public school.

On August 7, 1924, the county superintendent disorganized school district 21 for its long-continued failure to maintain a school, and that officer attached most of its territory, about eight sections of land, to union district No. 2, and the remainder, about three sections, to defendant district No. 64. On August 14 the county superintendent notified the county clerk of these proceedings, so that the school tax levies pertaining to union school No. 2 could be spread on the territory affected and in conformity therewith.

On the assumption that the board of county commissioners had power to review these proceedings, an appeal was taken from the action of the county superintendent, and the county board set aside the superintendent's order, and in lieu thereof made an order whereby all the territory of defunct school district No. 21 was attached· to school district No. 64. Pursuant to the order of the county board, the county clerk spread the levies of school district No. 64 over the whole of the territory of defunct district No. 21.

Hence this lawsuit. The pleadings recite the foregoing and other incidental facts, which so far as pertinent will be noted.

The statute directing the disorganization of a school district which has failed for three or more years to maintain a school reads as follows:

"Whenever any school district shall have failed or neglected to maintain a school for at least seven months in each year for a period of three successive years, such school district shall be disorganized by the county superintendent of public instruction and the territory thereof shall be attached to adjoining districts, as may be determined by the county superintendent: *Provided,* That this act shall not apply to any school district which shall have made provisions according to law for sending its pupils to other schools and for the payment of adequate transportation and tuition, unless such district shall be adjacent to a school district maintaining a graded school in which is offered an approved high-school course of at least two years. Whenever any school district adja-

cent to a district maintaining a graded school in which is offered an approved high-school course of at least two years shall have failed or neglected to maintain a school for at least seven months in each year for a period of three consecutive years, said adjacent district shall be disorganized by the county superintendent of public instruction, and the territory thereof shall be attached to the district maintaining such graded school in which is offered an approved high-school course of at least two years, or to adjoining districts, in the discretion of the county superintendent: *Provided further,* That where any such district is adjacent to a city of the third class in which there is maintained a high school or graded school, it shall be attached to the school district in which such city is located." (R. S. 72-818.)

It will be noted that when the facts exist which warrant the disorganization of a school district, the county superintendent's duty is clear and imperative. Such district *shall* be disorganized, and "the territory thereof *shall be attached* to the district maintaining such graded school in which is offered an approved high-school course of at least two years, or to adjoining districts, *in the discretion of the county superintendent."* If the adjacent graded-school district maintains the specified minimum high-school course, it is apparently the legislative intention that it should be preferred; if such graded district contains a third-class city, the statute is imperative; it must be so attached. This statute gives no hint of an appeal to the board of county commissioners; and while there are other statutes (R. S. 72-213, 72-214, 72-309) giving an appeal from the action of the county superintendent in the matter of the formation or alteration of a school district, and likewise from that officer's refusal to form or alter a school district, such appeal does not cover the matter under consideration. The conditions under which a school district is to be disorganized are defined by the statute, and when they exist the statute is to be executed and it is to be followed. Furthermore, the full significance of the text providing for the disposition of the territory of a disorganized district, "in the discretion of the county superintendent," may be appreciated by taking note of the fact that the statute is a revision and amendment of an earlier one having its inception in Laws of 1909, chapter 206, in which it was provided that such disorganized district should be annexed to adjoining districts by the county superintendent "in such a manner as to equalize as nearly as practicable the territory in area and taxable property." (Gen. Stat. 1915, §§ 8948, 8949.) That statute received some elaboration and amendment in Laws of 1917, chapter 275, but was not materially changed in the matter of

present concern. In 1921, however, the statute was amended so as to provide, among other details, that a school district which shall have failed to maintain a school for a defined minimum term for two successive years, etc., "shall be disorganized by the county superintendent of public instruction, in conjunction with the county commissioners, and the territory thereof shall be attached to adjoining districts, as may be determined by the county superintendent." And in the same statute it is further provided:

"Whenever any school district adjacent to a district maintaining a graded school in which is offered an approved high-school course of at least two years shall fail or neglect to maintain a school for at least seven months in each year for a period of two consecutive years, said adjacent district shall be disorganized by the county superintendent of public instruction, in conjunction with county commissioners, and the territory thereof shall be attached to the district maintaining such graded school in which is offered an approved high-school course of at least two years, or to adjoining districts, in the discretion of the county superintendent." (Laws 1921, ch. 228, §1.)

Recurring now to the present statute, first quoted above, it will be seen that in the last legislative revision of the act all reference to the county commissioners was stricken from the text and the county board was relieved of any official concern with the disposition of disorganized school-district territory. To summarize: the law as first written vested the matter in the discretion of the superintendent; later the statute required coöperative action between superintendent and county commissioners, and still later, and presently, the county board are relieved of all concern therewith.

In view of the foregoing, the action of the county commissioners in setting aside the order of the county superintendent and in attaching the territory of the defunct district to school district No. 64 was null and void; and, so too, are the tax levies extended by the county clerk pursuant thereto. Such tax levies must be expunged and the levies of union school district No. 2 spread on the tax rolls of the lands and property heretofore located in the defunct district in conformity with the notice given by the county superintendent to the county clerk on August 14, 1924, unless there is some infirmity in the action and order of the county superintendent based upon what the defendants have chosen to characterize as "abuse of discretion."

As this cause has been submitted on plaintiff's motion for judgment on the pleadings, we will have to assume, without evidence, that defendants' allegations touching the superintendent's "abuse of discretion" are true.

What are those allegations?

It is alleged that school district No. 64 recently lost its schoolhouse by a tornado, and that the school board had failed to keep the schoolhouse insured against such contingency, and that the district had no funds to rebuild, and that the district board desired to use the unused school house of district No. 21 but the county superintendent refused to give her permission for such use of the property. This was no abuse of discretion. The superintendent had no power to do as the defendant district board desired. The disposition of school property of a disorganized district is governed by statute. It must be sold to the highest bidder for cash after thirty days' notice. (R. S. 72-813.) The defendant district might have bid for the schoolhouse of school district No. 21 at such sale, under express authority of the statute.

It is also alleged that the school board of district No. 64 obtained permission from the district board of defunct district No. 21 to use the schoolhouse, and that some expense was incurred for repairs of the building. The disorganization of school district No. 21 under the mandate of the statute automatically terminated the official powers of the officers of school district No. 21. The statute directing the sale of the schoolhouse could not be interrupted by the unauthorized act of its ex-school board. This incident does not disclose any evidence of abuse of discretion on the part of the county superintendent.

Neither is abuse of discretion shown on the incident relating to the employment of a school teacher for district No. 64. It would be absurd to say to the county superintendent: "Because you encouraged the teacher employed by school district No. 64 to breach her contract, we must hold that you abused your discretion in the extraneous and scarcely related matter of attaching the major portion of defunct school district No. 21 to union school district No. 2."

In the oral argument it was also urged that the county superintendent had been largely influenced in her official action by some person who was personally greatly interested in the disposition of the territory of the defunct district. There is always some master spirit in every community who assumes the initiative in getting things done, whether it be to get official action on matters of public concern or otherwise. Such persons have natural traits of leadership, and it is not uncommonly said that they lead public officers by the nose. But that is merely a free-and-easy way of talking, and not always

nor generally just or correct. That such a charge is wholly gratuitous in this case is demonstrable by the result of the county superintendent's action. Whereas the statute seems fairly to indicate that all the territory of defunct school district No. 21 might have been and preferably should have been attached to the plaintiff district, the county superintendent—by a debatable stretch of her lawful authority, of her discretion—attached a substantial part of it to the defendant district. Whether she had such power or not, it precludes every probability of abuse of discretion.

Counsel for defendants have been somewhat insistent that this action should be protracted into a case where evidence *in extenso* might be aired at length. Perhaps the situation presented could be made to furnish the basis for an old-fashioned school-district row, where the welfare of the educational interests of the communities affected might be subordinated to the litigious disposition of parties interested. The court would only yield to such an unfortunate consequence if the issues as framed would not permit us to avert it. It can be avoided, however, by holding, as we unhesitatingly do, that conceding the truth of all that is pleaded by defendants, no abuse of discretion which would vitiate the action of the county superintendent is made to appear.

It follows that the writ of mandamus, as prayed for by plaintiff, must be allowed, directing the county clerk to expunge the tax levy of school district No. 64 from that portion of the territory and property of defunct school district No. 21 attached by the superintendent to union school district No. 2, and to extend thereon the lawful tax levies of union school district No. 2, and that the county treasurer govern his official conduct pertaining thereto in accordance herewith.

Writ allowed.